# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION

| | |
|---|---|
| CHRISTOPHER LAVERTY, on behalf of himself and all others similarly situated<br><br>        Plaintiff,<br>v.<br><br>NIAGARA BOTTLING, LLC<br><br>        Defendant. | Civil No. 5:17-cv-00196<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff, Christopher Laverty (hereinafter "Laverty" or "Plaintiff"), on behalf of himself and all other similarly situated, by and through counsel, brings this action against Defendant Niagara Bottling LLC (hereinafter "Niagara Bottling" or "Defendant") for violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 216 (b). Laverty also brings individual claims against Niagara Bottling alleging violations of: (1) the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 et seq.; (2) common law equitable estoppel under North Carolina Law; and (3) common law conversion under North Carolina law.

## THE PARTIES

1. Laverty is an adult individual who is a resident of Mooresville, North Carolina.

2. Niagara Bottling is a foreign business corporation registered and in good standing in the State of North Carolina.

## JURISDICTION AND VENUE

3. This Court has original federal question jurisdiction under 28 U.S.C. § 1331 for the claims brought under the FLSA and the FMLA.

4. This Court has personal jurisdiction because Niagara Bottling conducts business in Iredell County, North Carolina, which is located within this judicial district.

5. Venue is proper in this judicial district because Niagara Bottling has substantial business contacts in this district and because the unlawful acts alleged herein occurred in Iredell County, North Carolina.

6. Plaintiff's claims for equitable estoppel and conversion against Niagara Bottling are based on the common law of the State of North Carolina. Supplemental jurisdiction exists pursuant to 28 U.S.C. § 1367 for the pendent state claims because they arise out of the same nucleus of operative facts as Laverty's FMLA claim.

7. All of Plaintiff's alleged causes of action can be determined in this judicial proceeding and will provide judicial economy, fairness and convenience for the parties.

## COVERAGE ALLEGATIONS

8. At all times hereinafter mentioned, Niagara Bottling has been an employer within the meaning of Section 3 (d) of the FLSA, 29 U.S.C. § 203(d).

9. At all times hereinafter mentioned, Niagara Bottling has been an enterprise within the meaning of Section 3 (r) of the FLSA 29 U.S.C. § 203(r).

10. At all times hereinafter mentioned, Niagara Bottling has been an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that the enterprise has had employees engaged in commerce or in the production of goods for commerce, or employees

handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that enterprise has had and has an annual gross volume of sales made or business done of not less than $500,000 (exclusive of excise taxes at the retail level which are separately stated).

11. At all times hereinafter mentioned, Laverty has been an employee within the meaning of Section 3 (e) of the FLSA, 29 U.S.C. § 203(e).

12. At all times hereinafter mentioned, Laverty was an individual employee who was engaged in commerce or in the production of goods for commerce as required by 29 U.S.C. § 207.

13. At all times hereinafter mentioned, Niagara Bottling has been an employer within the meaning of the FMLA, 29 U.S.C. § 2611(4).

14. At all times hereinafter mentioned, Laverty was an "eligible employee" within the meaning of the FMLA, 29 U.S.C. § 2611(2), meaning that Niagara Bottling employed him for at least 12 months and he performed at least 1250 hours of service with Niagara Bottling during the 12-month period preceding the termination of his employment.

## PLAINTIFF'S FACTUAL ALLEGATIONS

15. Niagara Bottling is a water and/or beverage bottling company with geographically diversified production facilities throughout the United States.

16. Niagara Bottling operates one of its facilities located at 178 Mooresville Boulevard, Mooresville, NC 28115.

17. Niagara Bottling employed Laverty from on or about March 13, 2015 until March 27, 2017.

18. Niagara Bottling employed Laverty and other employees in the position of preventative maintenance technician.
19. Laverty and other preventative maintenance technicians spent the majority of their working hours trouble shooting, repairing and maintaining conveyors and high-speed assembly bottling equipment.
20. Niagara Bottling paid Laverty and other preventative maintenance technicians on an hourly basis.
21. Laverty and other preventative maintenance technicians reported to supervisor Thomas Frank ( hereinafter "Frank").
22. Frank regularly required Laverty and other preventative maintenance technicians to read and respond to work related text messages outside of scheduled work hours. Frank sent the text messages at issue both individually and in group messages to Laverty and other preventative maintenance technicians.
23. Niagara Bottling did not compensate Laverty and other preventative maintenance technicians for the time spent reading and responding to the text messages sent by Frank.
24. Laverty and other preventative maintenance technicians were required to respond to the text messages sent by Frank or be subject to reprimand and discipline.
25. Laverty and other preventative maintenance technicians regularly worked in excess of (40) hours per week during their tenure with Niagara Bottling.
26. Niagara Bottling did not pay Laverty and other preventative maintenance technicians an overtime premium for all hours they worked in excess of forty (40) hours each workweek.

27. Niagara Bottling did not record or track all hours worked by Laverty in excess of forty (40) hours each workweek.

28. At all relevant times, Niagara Bottling had knowledge that Laverty and other preventative maintenance technicians were required to respond to work related text messages sent by Frank after work hours.

29. On numerous occasions, Laverty complained to Human Resources Manager Melanie Calkins ("hereinafter Calkins") regarding the off-the-clock text messages sent by Frank.

30. At all relevant times, Laverty met or exceeded Niagara Bottling's legitimate employment expectations.

31. On or about February 3, 2017, Laverty notified Calkins that he needed to take leave under the FMLA to care for his mother, who was diagnosed with terminal lung cancer and given no more than 30-45 days to live. Calkins instructed Laverty to contact Anthem Life Insurance Company ("Anthem") to obtain FMLA certification paperwork.

32. On or about February 8, 2017, Anthem notified Laverty via U.S. Mail that he was eligible for FMLA leave and provided FMLA certification paperwork for Laverty to complete and return "within 18 calendar days."

33. On or about February 21, 2017, Laverty returned the FMLA certification paperwork to Anthem via facsimile.

34. On February 22, 2017, Laverty contacted Anthem to confirm receipt of the faxed paperwork and confirm approval of his FMLA leave. Laverty was informed by Anthem that his application was still pending approval and that he would be contacted if anything was missing or if any additional information was needed.

35. On March 7, 2017, Niagara Bottling notified Laverty via U.S. Mail that Niagara Bottling "transitioned all active and pending leave of absence and disability claims from Anthem to Aetna [Life Insurance Company]."

36. On March 8, 2017, Calkins telephoned Laverty and informed him that his FMLA paperwork work was incomplete because the doctor's signature was missing. Laverty told Calkins that his mother had died and that he was attending her funeral that day. Calkins responded, "don't worry about the paperwork today, we can deal with this when you return to work."

37. On March 13, 2017, Laverty returned to work and immediately followed up with Calkins regarding the incomplete FMLA paperwork. Calkins informed Laverty that the doctor's signature was missing from the paperwork.

38. That same day, or March 13, 2017, Laverty made arrangements for his FMLA certification paperwork to be resent with the doctor's signature. The corrected FMLA certification paperwork was sent via facsimile to Calkins.

39. On March 13, 2017, Calkins confirmed with Laverty that she received the completed faxed paperwork with the doctor's signature. Calkins further advised Laverty that "everything was ok and would be taken care of."

40. During the period March 13, 2017 to March 16, 2017, Laverty followed up with Calkins regarding the status of his FMLA paperwork. Calkins repeatedly assured Laverty that "everything was ok and would be taken care of."

41. To the extent Laverty failed to provide complete FMLA certification paperwork, Calkins falsely represented and/or concealed facts that conveyed the impression that Laverty had done all that was required of him under the FMLA.

42. At all relevant times, Laverty reasonably relied upon Calkins' repeated assurances that "everything was ok and would be taken care of" and reasonably believed he successfully submitted corrected FMLA certification paperwork.

43. At all relevant times, Calkins possessed knowledge of whether Laverty submitted corrected FMLA certification paperwork.

44. On or about March 24, 2017, Laverty received a letter from Aetna notifying him that that his FMLA claim was denied because Aetna did not receive the completed FMLA certification form.

45. On March 27, 2017, Calkins informed Laverty that his FMLA leave was denied because the paperwork was not properly completed and his position was filled while he was on leave.

46. In lieu of leave, Calkins offered Laverty a different position running a production line, earning less per hour, and working a rotating schedule, which included weekends. Calkins was aware that Laverty could not and would not accept this position as Laverty cares for his two disabled children on the weekends. Laverty declined to accept this position.

47. Calkins then informed Laverty that his employment was terminated. Laverty was escorted off the premises and refused access to his personal tool box.

48. On April 7, 2017, Laverty emailed Calkins requesting a date and time to retrieve his personal tool box.

49. On or about April 12, 2017, Niagara Bottling representative Adam Gilliam permitted Laverty to enter Defendant's premises to retrieve his tool box. When Laverty was presented his tool box, the lock was broken and many of his personal tools were missing.

50. Laverty's personal tools have not been returned nor has he been compensated for the wrongful, intentional conversion of his personal tools.

## COLLECTIVE ACTION ALLEGATIONS

51. This action is maintainable as an "opt-in" collective action pursuant to the FLSA, 29 U.S.C. § 216(b), as to claims for unpaid overtime compensation, liquidated damages, and attorneys' fees and costs.

52. Pursuant to 29 U.S.C. § 216(b), Plaintiff brings his FLSA claim on behalf of himself and similarly situated employees who: (1) have worked as preventative maintenance technicians (and/or individuals in any other similarly titled position) at Niagara Bottling's Moorseville, NC location; (2) who were required to communicate with Niagara Bottling supervisor Frank regarding work-related matters off-the-clock; (3) who worked overtime in one or more weeks that the off-the-clock communications occurred; and (4) who elect to opt-in to this action ("Opt-in Plaintiffs).

53. Consistent with Defendant's policy and practice, Plaintiff and Opt-in Plaintiffs have not been paid all overtime compensation for all hours worked beyond 40 per workweek because they have been required to perform work off-the-clock.

54. Plaintiff is similarly situated to Opt-in Plaintiffs because on a regular and recurring basis, Plaintiff and Opt-in Plaintiffs were required to respond to work-related text messages without receiving pay for this work.

55. Plaintiff is similarly situated to Opt-in Plaintiffs because Plaintiff and Opt-in Plaintiffs perform or performed the same basic job duties, were paid pursuant to the same compensation scheme, and were subject to the same employment policies, practices and procedures.

56. The off-the-clock communications regularly required Plaintiff and Opt-in Plaintiffs to spend in excess of 15 minutes per night responding to their supervisor's requests.

57. All of the off-the-clock work that Plaintiff and Opt-in Plaintiffs have performed has been assigned by Defendant and Defendant has been aware of all of the work that Plaintiff and Opt-in Plaintiffs have performed.

58. As part of its regular business practice, Defendant has intentionally, willfully and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA with respect to Plaintiff and Opt-in Plaintiffs. This policy, pattern and practice includes, but is not limited to, willfully failing to pay Plaintiff and Opt-in Plaintiffs premium overtime wages for all hours worked in excess of 40 hours per workweek.

59. Defendant is aware or should have been aware that federal law required it to pay Plaintiff and Opt-in Plaintiffs overtime premiums for all hour worked in excess of 40 per workweek.

60. Plaintiff and Opt-in Plaintiffs have each worked more than forty (40) hours in one or more workweeks within the applicable statutory period.

61. There are other similarly situated current and former employees who have been denied overtime compensation in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it. This notice should be sent to the Opt-in Plaintiffs pursuant to 29 U.S.C. § 216(b).

62. Those similarly situated employees are known to Defendant, are readily identifiable, and can be located through Defendant's records.

63. The foregoing conduct, as alleged herein, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a). Defendant's conduct was willful in that it

knew that it's payroll policies, practices and/or procedures were in violation of the FLSA or it showed reckless disregard to whether it's payroll policies, practices and/or procedures were in violation of the FLSA.

## COUNT I
### (Violation of FLSA – Overtime Collective Action)

64. Plaintiff incorporates by reference paragraphs 1-63 of his Complaint.

65. Defendant violated the FLSA by failing to pay Plaintiff and Opt-in Plaintiffs an overtime premium rate of pay for all hours worked in excess of forty in a workweek.

66. Defendant violated the FLSA by failing to keep, make and preserve accurate records of all time worked by Plaintiff and Opt-in Plaintiffs.

67. Defendant's violation of the FLSA was willful.

## COUNT II
### (Violation of FMLA)

68. Laverty incorporates by reference paragraphs 1-67 of his Complaint

69. Count II arises from Niagara Bottling's interference with Laverty's rights under the FMLA and its failure to reinstate Laverty to an equivalent position.

70. Niagara Bottling's actions were intentional, willful and/or taken with reckless disregard of Laverty's rights under the FMLA.

71. Laverty suffered damages as a result of Niagara Bottling's unlawful conduct.

## COUNT III
### (Equitable Estoppel)

72. Laverty incorporates by reference paragraphs 1-71 of his Complaint.

73. Count III arises from Laverty's reasonable reliance on Calkins' repeated affirmations and representations that Laverty successfully submitted his corrected FMLA certification

paperwork. Calkins knew or should have known that Laverty would rely on her assurances that "everything was ok and would be taken care of" because she is Defendant's human resources manager and previously notified Laverty about the status of his application. Furthermore, at all relevant times, Calkins possessed actual knowledge of whether Laverty successfully submitted his corrected FMLA certification.

74. Injustice can only be avoided by enforcing the representations and assertions of Defendant which Laverty reasonably and detrimentally relied.

## COUNT IV
### (Conversion)

75. Plaintiff incorporates by reference paragraphs 1-74 of his Complaint.

76. Count IV arises out of Niagara Bottling's interference with Laverty's ownership, possession and control of his personal tools. To date, Laverty's personal tools have not been returned nor has he been compensated for the wrongful conversion of his personal tools.

77. The tort of conversion is well defined as an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights. *Variety Wholesalers v. Salem Logistics*, 723 S.E.2d 744 (NC 2012)

78. Niagara Bottling's actions were unauthorized and intentional, willful, wanton and/or reckless.

79. Laverty suffered damages as a result of Niagara Bottling's unlawful conduct.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff and all employees similarly situated who join in this action demand:

a) Order the Defendant to file with this Court and furnish to counsel for Plaintiff a list of all names, telephone numbers, home addresses and email addresses of all preventative maintenance technicians, or any other similarly titled position, who have worked for Defendant at its Mooresville, North Carolina location within the last three years;

b) Authorize Plaintiff's counsel to issue notice at the earliest possible time to all preventative maintenance technicians, or any other similarly titled position, who have worked for Defendant within the last three years, informing them that this action has been filed, of the nature of the action, and of their right to opt-in to this lawsuit if they were deprived of overtime compensation, as required by the FLSA;

c) An Order pursuant to Section 16(b) of the FLSA finding Defendant liable for unpaid overtime wages due to Plaintiff (and those who have joined in the suit) and for liquidated damages equal in amount to the unpaid compensation found due to Plaintiff (and those who have joined in the suit);

d) A Declaration and finding by the Court that Defendants willfully violated provisions of the FLSA by failing to comply with the overtime requirements of the FLSA;

e) A finding by the Court that Niagara Bottling is equitably estopped from contending that Laverty failed to provide satisfactory and complete FMLA certification paperwork for his leave of absence in February/March 2017;

f) An Order pursuant to the FMLA that Niagara Bottling reinstate Laverty to the position of preventative maintenance technician he held prior to the termination of his employment or to an equivalent position with full seniority, benefits and wages, or pay front pay to Laverty in lieu thereof;

g) An Order pursuant to the FMLA that Niagara Bottling pay Laverty all lost wages, benefits, compensation, and monetary loss suffered because of Niagara Bottling's unlawful actions;

h) An Order pursuant to the FMLA that Niagara Bottling pay Laverty liquidated damages;

i) An Order awarding Laverty compensatory damages for the wrongful conversion of his personal tools;

j) An Order awarding Laverty punitive damages for the willful and wanton conversion of his personal tools;

k) An Order awarding the costs of this action;

l) An Order awarding reasonable attorneys' fees;

m) An Order awarding pre-judgment and post-judgment interest at the highest rates allowed by law; and

n) An Order granting such other and further relief as may be necessary and appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues of fact.

Dated: October 31, 2017                    Respectfully submitted,


 /s/ Philip J. Gibbons, Jr.
Philip J. Gibbons, Jr, NCSB #50276
Danielle Hall NCSB#51822


PHIL GIBBONS LAW, P.C.
15720 Brixham Hill Ave, Ste 331
Charlotte, North Carolina 28277
Telephone:     (704) 625-2834
E-Mail:  phil@philgibbonslaw.com
        danielle@philgibbonslaw.com